UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MATTHEW BLOOMER,

         Plaintiff,

v.

BURLINGTON COAT FACTORY
WAREHOUSE CORPORATION,

         Defendant.

Case No.8:23-00544

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff MATTHEW BLOOMER ("Plaintiff" or "Bloomer") sues Defendant,

BURLINGTON COAT FACTORY WAREHOUSE CORPORATION

("Defendant" or "Burlington"), and states as follows:

## CAUSES OF ACTION

1.     This is an action under the Americans with Disabilities Act as amended

by the ADA Amendments Act of 2008, 42 U.S.C. § 12101 et seq. (ADA) as amended

by the ADA Amendments Act of 2008 (ADA); the Family and Medical Leave Act of

1993, 29 U.S.C. § 2601, et seq. (FMLA); the Florida Civil Rights Act., Fla. Stat. §

760.01 et seq. (FCRA);  Florida's Workers' Compensation Anti-Retaliation Statute,

Fla. Stat. § 440.205 (FWCRA) for Defendant's unlawful employment practices against

Plaintiff based on his disability, serious health condition, and protected activity. The

action seeks declaratory, injunctive, and equitable relief, as well as monetary damages,

punitive damages, costs, and attorney's fees.

## PARTIES

2.      Plaintiff is an individual who currently resides in Manatee County, Florida.

3.      Defendant is a Florida profit corporation headquartered in New Jersey that touts itself as the largest outerwear retailer in the United States. Defendant was originally a Delaware corporation but converted to a Florida entity in 2018.

## JURISDICTION AND VENUE

4.      Subject matter Jurisdiction is proper in this Court under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claims per 42 U.S.C. § 1367 as the Florida Civil Rights Act and Workers' Compensation Retaliation claims are so related to the federal claims that they form part of the same case or controversy.

5.      Personal jurisdiction and venue are proper in the United States District Court for the Middle District of Florida because at all times material, Defendants resided in and/or conducted business in, and significant events giving rise to Plaintiff's claims occurred within the Florida counties comprising the U.S. District Court, Middle District of Florida.

6.      Venue is proper in the Tampa Division under Local Rule 1.04 since the action accrued in Hillsborough County, Florida over which the Tampa Division has jurisdiction.

7.      With the exception Plaintiff's ADA claims, all conditions precedent to maintaining this action have occurred, been performed, are excused, and/or have been waived. Plaintiff reserves the right to amend to plead his ADA claims upon the

issuance of a right-to-sue letter from the EEOC.  Because the facts of the ADA claims form the same theory of liability as the FCRA claims pleaded below, and because Defendant has appeared with counsel throughout the entirety of the EEOC process, there should be no prejudice to Defendant concerning any amendment to include the ADA claims.

8.     With regard to Plaintiff's FCRA claims, all conditions precedent have been met to the extent that Plaintiff's claims were deemed dual-filed with the Florida Commission on Human Relations, who failed to make any determination on the charge within 180 days of filing, nor has Plaintiff been notified under Fla. Stat. § 760.11(8) that he must file a civil action in one year from the date the FCHR certifies that the notice was mailed. See *Seale v. EMSA Corr. Care, Inc.*, 767 So. 2d 1188 (Fla. 2000).

## GENERAL ALLEGATIONS

9.     Plaintiff was formerly employed by Defendant Burlington as a Store Manager from August 2019 to March 17, 2021 working at Store #349 (the "Store").

10.     Plaintiff is a person with disabilities as defined under the ADA and FCRA.

11.     Plaintiff's disability conditions, particularly during periods of episodic flare-ups affected multiple major life activities, including but not limited to his ability to think, communicate, concentrate, process information, breathe, interact with others, read social cues, listen, speak, sleep, remember, take care of himself, and regulate emotions and thoughts.

12.     Plaintiff had a record of a disability impairment of which Defendant was aware.

13.     Plaintiff was regarded as or perceived as having a disability impairment by Defendant.

14.     Plaintiff was, at all times material during his employment, qualified to perform the essential functions of his position with or without reasonable accommodations.

15.     On February 12, 2020, while performing his duties, a freight elevator gate belonging to Defendant fell on Plaintiff, injuring his shoulder.

16.     The same day, Plaintiff reported the injury to Defendant's injury reporting hotline and proceeded with making a claim for workers' compensation benefits.

17.     Plaintiff subsequently reported the matter to his supervisor, Regional Manager Todd Abrams ("Abrams").

18.     As a result of the injury, Plaintiff had restrictions placed on his ability to lift heavy objects and was required to use a sling for his affected arm.

19.     Although Plaintiff's job, his duties did not ordinarily include lifting, and to the extent lifting was required, this duty could be delegated to subordinate employees.

20.     Notwithstanding, Abrams would direct Plaintiff specifically to perform tasks that Abrams knew were in violations of Plaintiff's work restrictions, such as

CALCIANO PIERRO, PLLC

lifting, showing a general disregard for Plaintiff's injury and attendant work restrictions

21.     Prior to Plaintiff's injury, Abrams generally made favorable comments about Plaintiff, such as in December 2019 when Abrams noted that Plaintiff's performance was good and commented "I only wish that I could have put you in a better store." Plaintiff's evaluation indicated that he was meeting company standards, and Plaintiff got the sense that Abrams was a making sincere to provide constructive guidance and coaching.

22.     However, about a week or two after Plaintiff's injury, Abrams expressed displeasure with Plaintiff and told him that he was going to cost the company a lot of money due to the injury and workers' compensation claim. Abrams' attitude generally turned negative towards Plaintiff and his work performance after the injury, with Abrams often making bad-faith attempts to criticize Plaintiff's Store and performance at every opportunity, sometimes in front of subordinate employees or even customers.

23.     For example, when Plaintiff began working as Store Manager, the Store had been one of the Defendant's most broken and worse-performing stores in the region. The Store also suffered from high management turnover.

24.     Within Plaintiff's first fourteen months of employment, he turned the Store around into one of the top-performing stores in region as evidenced by numerous reports.

25.     Nonetheless, after his injury on the job, Abrams attempted to paint a very different picture of Plaintiff, stating that he was the worst Store Manager and that the

5

Store was the worst in the region. Abrams generally embarked on a campaign to establish a different and harsher standard for Plaintiff than other managers to create the appearance of performance issues as pretext for Plaintiff's removal from the company.

26.    Abrams continued to engage in a pattern of generally treating Plaintiff worse than other managers under Abrams' supervision. For example, on June 1, 2020, Abrams—in front of both customers and associate employees—told Plaintiff that he was "not going to make it" at Burlington and that the Store was the worst store in the region before citing minor issues applicable to most if not all stores under Abrams' supervision.

27.    Plaintiff visited other stores under Abrams' supervision during the month of June 2020 and observed that those stores suffered from the same conditions of which Abrams complained to Plaintiff, but to a noticeably worse extent. These issues persisted for months without Abrams taking corrective action with other managers; however, when it came to Plaintiff, Abrams was constantly attempting to disparage his performance and make it seem to others that Plaintiff and his Store were exceptional in their poor performance to create a pretextual basis to terminate Plaintiff. Plaintiff took photos evidencing the conditions of the comparator stores that were visibly worse than what Abrams referred to as the "worst store" under Plaintiff's management.

28.    In June 2020, Plaintiff attended training in Orlando and was told by another Store Manager who trained Plaintiff that he should be proud of how his Store

looks, confirming that Abrams had been singling out Plaintiff in a discriminatory manner in light of Plaintiff's comparators.

29.     On June 30, 2020, Plaintiff complained to Pam Wiggins, Defendant's Regional HR Manager (hereinafter "Wiggins"), about how he was being targeted by Abrams. Wiggins did not inquire further and explained that there was nothing to worry about since Abrams had not placed Plaintiff on a Performance Improvement Plan (PIP).

30.     On August 13, 2020, Plaintiff scored 95% on a loss prevention audit.

31.     Despite the assurance from Wiggins and Plaintiffs generally positive performance, Abrams continued and escalated his adverse treatment of Plaintiff by subjecting him to ridicule, offensive jokes, insulting names, and reduced job responsibilities.

32.     On October 1, 2020, Wiggins came to Plaintiff's Store and told him that he should look for a new job and that he no longer has the support of the regional staff, including Abrams. Plaintiff asked why the regional staff no longer supported him; Wiggins replied that she did not know why.

33.     On November 6, 2020, Plaintiff was placed on a Performance Improvement Plan (PIP) created by Abrams and given to Plaintiff by Wiggins.

34.     The PIP cited Plaintiff for pretextual store violations that contradicted objective data from reports and tended to score and treat Plaintiff more harshly than Abrams scored comparator managers from similar stores.

35.     Plaintiff, beleaguered by Abrams constant assaults on his performance, had to take a leave of absence due to the attendant effects on his health, which amounted to a serious health condition under the FMLA and became a diagnosed disability under the ADA and related law.

36.     On or around November 5, 2020, Plaintiff notified Wiggins via text message that he needed time off immediately to go to his healthcare provider.

37.     The very next day, on November 6, 2020, Plaintiff gave Wiggins a note from his doctor explaining that Plaintiff needed to take two weeks off due to a serious health condition. Wiggins was told he needed to use sick and PTO time while on leave. On information and belief, Plaintiff never provided any information for Family and Medical Leave (FMLA) despite Defendant being an FMLA employer.

38.     Plaintiff contacted the benefits administrator on or around November 6 or 7, 2020, for short term disability benefits, and Defendant was provided with written notice of Plaintiff's disabilities and serious health conditions in writing to Laura Britt in Human Resources ("Britt"), which included major depressive disorder, generalized anxiety disorder, attention deficit disorder, and insomnia. Plaintiff was out on leave from approximately November 6, 2020 through January 25, 2021.

39.     According to Defendant's employee handbook, Defendant has not prescribed a particular method calculating the twelve-month period under the FMLA in which leave may be taken; accordingly, Plaintiff was entitled to utilize the method that provided the most beneficial outcome for him. 29 CFR § 825.200(e).

40.    Moreover, in addition to FMLA leave, Defendant maintained its "Burlington Leave" policy available to full-time personnel who do not meet the eligibility requirements for FMLA or who require additional time off following the exhaustion of other leave options like FMLA.

41.    On January 2, 2021, Plaintiff contacted Joyce Manning, Executive VP of HR, and Fred Hand, Executive VP of HR, and complained of, among other things, the discrimination, harassment, and retaliation he was subjected to by management.

42.    On January 25, 2021, Plaintiff returned from his medical leave of absence. Immediately upon his return, management—especially Wiggins—continued the harassment of Plaintiff.  Plaintiff was subjected to ridicule, made fun of and singled out for disparate treatment, and held to a higher standard than other similarly situated employees.

43.    The investigation into Plaintiff's complaint was closed on February 9, 2021, with a conclusion that no discrimination occurred. From comments made to Plaintiff, it was clear that Wiggins and Abrams had been interviewed in connection with the investigation and had notice of Plaintiff's complaints made.

44.    Plaintiff was made by Abrams and Wiggins to feel that his efforts as an employee were never good enough when other Store Managers were not being held accountable for the same or similar issues at their stores.

45.    On March 12, 2021, Plaintiff sent a written notice to Britt that he would not be in the following day due to chest pains.

46.     On March 15, 2021, Plaintiff sent a written notice to Britt that he was under the care of a physician for a month and needed to be on leave due to exacerbation of serious health conditions and disabilities arising from the stress from the continuous harassment. Plaintiff further asked about whether she should file a workers' compensation claim for the injuries caused by a hostile work environment. Britt failed to respond.  No one ever responded to Plaintiff about his FMLA rights or FMLA eligibility.

47.     On March 17, 2021, while on medical leave, Plaintiff was discharged from his position as Store Manager by Anthony Van Sant, Territory HR Manager. The Plaintiff asserted pretextual reasons for the decision. Plaintiff was criticized for the performance of the Store during times he was on a leave of absence and unavailable to perform job duties due to a serious health condition.

48.     Plaintiff has had to retain the undersigned counsel to bring the instant action and will incur attorney's fees for said representation.

## COUNT I – FAMILY AND MEDICAL LEAVE ACT
*(Interference with Plaintiff's FMLA Rights)*

49.     Plaintiff realleges and adopts, as if fully set forth in Count I, the allegations in paragraphs 1 through 48.

50.     Defendant is an employer covered by the Family Medical Leave Act pursuant to 29 C.F.R. § 825.104(a).

51.     Plaintiff was entitled to leave under the Family Medical Leave Act, pursuant to 29 U.S.C. § 2601, and was eligible for protected leave under 29 C.F.R. § 825.110.

52.     Plaintiff qualified for medical leave due to his own serious health condition under 29 C.F.R. § 825.100(a).

53.     Defendant improperly denied and interfered with Plaintiff's FMLA rights under C.F.R. § 825.300(b)(1) by failing to timely notify Plaintiff of his right to utilize protected leave or otherwise provide notice of his eligibility to use FMLA leave.

54.     Defendant was provided with sufficient notice, under 29 C.F.R. § 825.302(b), of Plaintiff's intent to take leave for a serious health condition.

55.     Defendant further interfered with Plaintiff's FMLA rights by holding him to the same performance standards as employees who were not on leave and generally failing to take into account Plaintiff's protected absences when scoring performance, creating a performance improvement plan, and terminating his employment in such a manner that effectively penalized Plaintiff for taking leave.

56.     Defendant further interfered with Plaintiff's FMLA rights by failing to designate the March 2021 leave as FMLA leave.

57.     Defendant further interfered with Plaintiff's FMLA rights by terminating his employment while he was on an FMLA-protected leave of absence.

58.     As a result of Defendant's interference, Plaintiff has been damaged.

59.     Defendant's interference was willful; Defendant's conduct regarding Plaintiff's FMLA rights were objectively unreasonable per 29 U.S.C. § 2617 (a)(1)(A)(iii), which authorizes liquidated damages under such circumstances.

WHEREFORE, Plaintiff prays the judgment be entered for:

(a)     Wages, employment benefits, and other compensation lost and actual monetary losses sustained by Plaintiff as a result of such unlawful interference including back pay and front pay;

(b)     Pre-judgment interest at the prevailing rate from the date of termination until the judgment on the award of wages, employment benefits, compensation, and actual monetary losses;

(c)     Liquidated damages doubling the award of interest, wages, employment benefits, and other compensation lost to Plaintiff.

(d)     Reasonable attorney's fees and cost expenses of this action pursuant to 29 U.S.C. § 2617 (a)(3); and,

(e)     Such other relief as this Court deems just and proper.

### COUNT II – FAMILY AND MEDICAL LEAVE ACT
*(Retaliation)*

60.     Plaintiff realleges and adopts, as if fully set forth in Count II, the allegations in paragraphs 1 through 59.

61.     Plaintiff engaged in activity protected by the Family and Medical Leave Act pursuant to 29 U.S.C. § 2601.

62.     Plaintiff engaged in protected activity we he requested FMLA and placed Defendant on notice of the need to take leave for one or more potentially FMLA qualifying conditions.

63.     Plaintiff suffered an adverse action when he was terminated from employment.

64.     Plaintiff's termination was casually connected to his availment of a right under the FMLA.

65.     Plaintiff has suffered damages as a result of the retaliation.

66.     Defendant's retaliation was willful; furthermore, Defendant's decision to terminate Plaintiff due to his availment of rights under the FMLA was objectively unreasonable per 29 U.S.C. § 2617(a)(1)(A)(iii), which authorizes liquidated damages under such circumstances.

WHEREFORE, Plaintiff prays that judgment be entered for:

(a)     Wages, employment benefits, and other compensation lost and actual monetary losses sustained by Plaintiff as a result of such unlawful interference including back pay and front pay;

(b)     Pre-judgment interest at the prevailing rate from the date of termination until the judgment on the award of wages, employment benefits and compensation, and actual monetary losses;

(c)     Liquidated damages doubling the award of interest, wages and employment benefits, and other compensation lost to Plaintiff;

(d)     Reasonable attorney's fees, costs and expenses of this action pursuant to U.S.C. § 217(a)(3); and,

(e)     Such other relief that this Court deems just and proper.

### COUNT III – FLORIDA CIVIL RIGHTS ACT
*(FCRA – Disability Discrimination – Failure to Accommodate)*

67.     Plaintiff realleges and adopts, as if fully set forth in Count III, the allegations in paragraphs 1 through 49.

68.     At all relevant times, Plaintiff was an "employee" within the meaning of the FCRA, and Defendant was an "employer" within the meaning of the FCRA.

69.     Plaintiff requested reasonable accommodations of a leave of absence to treat a flare-up of his disability conditions.

70.     The requested accommodations were reasonable.

71.     The requested accommodation presented no undue hardship to Defendant.

72.     Plaintiff further supported his request for accommodation with a note from his treating healthcare provider substantiating the need for leave.

73.     Defendant's policies called for the application of FMLA leave and "Burlington leave" for similarly situated employees with serious health conditions, even in the absence of a disability

74.     Defendant responded to the request by refusing to accommodate Plaintiff's disability and terminating his employment.

75.     Defendant knowingly and intentionally discriminated against Plaintiff because of his disability.

76.     Defendant is liable for the acts and omissions of its agents and employees.

77.     Plaintiff suffered injuries, damages, and losses as a result of Defendant's failure to reasonably accommodate his disability.

78.     Defendant's failure to accommodate Plaintiff's disability was a direct and proximate cause of Plaintiff's injuries, damages, and losses.

79.     Defendant acted with malice or reckless indifference to Plaintiff's rights under the FCRA when it refused to provide a reasonable accommodation for his disability.

80.     As stated above, Defendant discriminated against Plaintiff by refusing to provide a reasonable accommodation, which violated the FCRA.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant, and grant:

a)     Appropriate declaratory and other injunctive and/or equitable relief;

b)     Compensatory and consequential damages, including damages for mental anguish and emotional distress, including but not limited to depression, loss of dignity, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, emotional pain, and other intangible injuries on all claims allowed by law in an amount to be determined at trial;

c)     All economic losses on all claims allowed by law;

d)     Punitive damages on all claims allowed by law in an amount to be determined at trial;

e)     Pre- and post-judgment interest at the lawful rate;

f)     Attorney's fees and costs of suit;

g)     Any further relief that this court deems just and proper, and any other relief as allowed by law.

### COUNT IV - FLORIDA CIVIL RIGHTS ACT
*(FCRA – Disability Discrimination – Wrongful Termination)*

81.     Plaintiff realleges and adopts, as if fully set forth in Count IV, the allegations in paragraphs 1 through 49 and 67 through 80.

82.     Defendant treated Plaintiff less favorably than his similarly situated counterparts who did not have Plaintiff's disability conditions.

83.     Defendant discriminated against Plaintiff in violation of the FCRA by wrongfully terminating his employment.

84.     Defendant knowingly and intentionally discriminated against Plaintiff because of his disability, his record of a disability, and/or the perception of a disability.

85.     Defendant is liable for the acts and omissions of its agents and employees. Defendant, either directly or by and through its agents, discriminated against Plaintiff and caused him injuries, damages, and losses.

86.     Plaintiff suffered injuries as a result of Defendant's acts.

87.     Defendant's termination of Plaintiff was a direct and proximate cause of Plaintiff's injuries, damages, and losses.

88.     Defendant acted with malice or reckless indifference to Plaintiff's rights under the FCRA when it terminated Plaintiff.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant, and grant:

a)      Appropriate declaratory and other injunctive and/or equitable relief;

b)      Compensatory and consequential damages, including damages for mental anguish and emotional distress, including but not limited to depression, loss of dignity, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, emotional pain, and other intangible injuries on all claims allowed by law in an amount to be determined at trial;

c)      All economic losses on all claims allowed by law;

d)      Punitive damages on all claims allowed by law in an amount to be determined at trial;

e)      Pre- and post-judgment interest at the lawful rate;

f)      Attorney's fees and costs of suit;

g)      Any further relief that this court deems just and proper, and any other relief as allowed by law.

## COUNT V - FLORIDA CIVIL RIGHTS ACT
### *(FCRA – Retaliation – Wrongful Termination)*

89.     Plaintiff realleges and adopts, as if fully set forth in Count V, the allegations in paragraphs 1 through 49 and 67 through 88.

90.     Plaintiff engaged in protected activity when he asked Defendant for reasonable accommodations for his disability and when he made complaints about the harassment, discrimination, and subsequent retaliation he experienced.

91.     As a direct result of Plaintiff protected activity, Defendant retaliated against Plaintiff by terminating his employment.

92.     Defendant treated Plaintiff less favorably than his similarly situated counterparts who did not engage in protected activity.

93.     Defendant is liable for the acts and omissions of its agents and employees. Defendant, either directly or by and through its agents, retaliated against Plaintiff and caused him injuries, damages, and losses.

94.     Plaintiff suffered injuries as a result of Defendant's retaliatory conduct.

95.     Defendant's retaliatory conduct was the direct and proximate cause of Plaintiff's injuries, damages, and losses.

96.     Defendant acted with malice or reckless indifference to Plaintiff's rights under the FCRA.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant, and grant:

a)      Appropriate declaratory and other injunctive and/or equitable relief;

b)      Compensatory and consequential damages, including damages for mental anguish and emotional distress, including but not limited to depression, loss of dignity, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, emotional pain, and other

18

intangible injuries on all claims allowed by law in an amount to be determined at trial;

c)    All economic losses on all claims allowed by law;

d)    Punitive damages on all claims allowed by law in an amount to be determined at trial;

e)    Pre- and post-judgment interest at the lawful rate;

f)    Attorney's fees and costs of suit; and

g)    Any further relief that this court deems just and proper, and any other relief as allowed by law.

## COUNT VI – WORKERS COMPENSATION RETALIATION
*(WCRA Retaliation – Fla. Stat. § 440.205)*

97.    Plaintiff realleges and adopts, as if fully set forth in Count VI, the allegations in paragraphs 1 through 49.

98.    Florida Statute, § 440.205 states in pertinent part that "[n]o employer shall discharge…any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Florida's Workers' Compensation Law."

99.    As a direct result of Plaintiff's valid claim(s) for workers' compensation benefits, Defendant harassed Plaintiff, treated him worse than similarly situated employees, prefabricated a basis to place him on a performance improvement plan, and ultimately terminated Plaintiff's employment.

100.   As a result of Defendant's wrongful actions, Plaintiff has suffered both economic losses in the way of lost wages as well as emotional pain and suffering.

101.   Defendant is liable for the acts and omissions of its agents and employees. Defendant, either directly or by and through its agents, retaliated against Plaintiff and caused him injuries, damages, and losses.

102.   Plaintiff suffered injuries as a result of Defendant's retaliatory conduct.

103.   Defendant's retaliatory conduct was a direct and proximate cause of Plaintiff's injuries, damages, and losses.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant, and grant:

a)   Appropriate declaratory and other injunctive and/or equitable relief;

b)   Compensatory and consequential damages, including damages for mental anguish and emotional distress, including but not limited to depression, loss of dignity, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, emotional pain, and other intangible injuries on all claims allowed by law in an amount to be determined at trial;

c)    All economic losses on all claims allowed by law;

d)   Pre- and post-judgment interest at the lawful rate;

e)   Attorney's fees and costs of suit;

f)   Punitive damages on all claims allowed by law in an amount to be determined at trial; and

g)      Any further relief that this court deems just and proper, and any other

relief as allowed by law.

### DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United

States, a demand a trial by jury as to all issues triable as of right.

Respectfully submitted,

*/s/ Brian Calciano*

BRIAN CALCIANO
Florida Bar No. 108879
*Trial Counsel for Plaintiff*

**CALCIANO PIERRO, PLLC**
146 Second Street North – Suite 304
St. Petersburg, Florida 33701
(727) 217-5400
brian@flemploymentlaw.com